Ken Wise, Justice
This lawsuit arises out of a challenge to the enforcement of truancy violations in the Fort Bend Independent School District and the implementation of an allegedly unauthorized criminal truancy court in Fort Bend County. The plaintiffs seek declaratory and prospective injunctive relief to stop numerous public officials named as defendants from continuing to engage in allegedly ultra vires acts in connection with the operation of the county's truancy program. After several hearings on numerous motions filed by the parties, the trial court signed a final judgment dismissing the plaintiffs' claims and assessing attorney's fees and sanctions against the plaintiffs and their attorneys.
On appeal, the plaintiffs and their attorneys raise twelve issues. In their first two issues, the plaintiffs and their attorneys contend that the final judgment is void and that the trial judge should have been disqualified. In their remaining issues, the plaintiffs and their attorneys contend that the trial judge erred in granting a Texas Citizens Participation Act motion to dismiss filed by certain defendants and denying a "counter" motion to dismiss filed by the plaintiffs, granting certain defendants' pleas to the jurisdiction and Rule 91a motions, denying class certification, and awarding sanctions and attorney's fees. For the reasons explained below, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Appellants are Verakisha Roach and Jeremy Brady, the parents of children who received summonses to appear in a Fort Bend County truancy court, and their attorneys at trial, Deron Harrington, Susan Soto, Carol Anhalt, and Percy Isgitt.[1] Appellees are numerous Fort Bend County public officials, including the county judge and county commissioners, the school district trustees, judges of the Fort Bend district and county courts at law, a magistrate, a justice of the peace, and a chief probation officer, all in their official capacities only.
I. Factual Background
At the time this case arose, former section 25.094 of the Texas Education Code, titled "Failure to Attend School," provided that truancy was punishable as a class C misdemeanor.[2] Appellants allege that problems with truancy enforcement began in the 2007-2008 school year, when the Fort Bend Independent School District (FBISD), the Fort Bend County Juvenile *210 Board,[3] the County Commissioners, and the former Chief Juvenile Probation Officer, created the "Saved by the Bell" program to aggressively enforce school attendance. In implementing the program, appellants contend that FBISD attendance specialists issued computer-generated and fraudulently notarized failure-to-attend-school complaints that were not based on probable cause or personal knowledge, resulting in thousands of fraudulent complaints.
Appellants assert that more problems arose after the Legislature passed House Bill 2132, a 2011 law providing for the appointment of magistrates with limited powers to assist courts with truancy jurisdiction.[4] Instead of following that law, appellants allege that the County Judge and Commissioners, in coordination with FBISD trustees and members of the Juvenile Board, participated in a scheme to create and fund an unauthorized "Truancy Court" in which the appointed magistrate was considered to be the equivalent of a judge with actual truancy jurisdiction. Appellants allege that the Truancy Court operated beyond its statutory authority by, among other things, issuing summonses to appear without authorization and conducting pretrial hearings after not guilty pleas, contrary to the express provisions of HB 2132.
Appellants further allege that the Precinct 3 Justice of the Peace issued a "blanket" referral order of truancy filings to the unauthorized Truancy Court and that FBISD attendance specialists and others were permitted to directly issue summonses in the name of the Truancy Court. Appellants maintain that automated attendance data, rather than the personal knowledge or investigation of any individual, was the sole basis for these summonses. Further, appellants allege, the computer-generated summonses were fraudulently notarized by FBISD employees. Appellants allege that this scheme constituted ultra vires acts by the named public officials.
In April 2015, appellants received truancy complaints ordering them and their children to appear in the Truancy Court. Both retained Harrington as their attorney. On Friday, April 24, Harrington met with FBISD officials and presented a draft petition naming FBISD, the County, and numerous public officials and employees as defendants. The petition alleged three counts, and sought declaratory and prospective injunctive relief and attorney's fees. The FBISD superintendent told Harrington that the school district would take "immediate remedial action."
The following Monday, April 27, FBISD's attorney informed Harrington that FBISD was immediately suspending its existing truancy procedures, including referring students to Truancy Court, while conducting a review of the program. The next day, the Truancy Court issued a press release postponing all plea dockets until further notice. No further referrals to the Truancy Court were ever made. On May 5, Harrington was notified by a county prosecutor that the truancy case against Brady's son had been dismissed. The truancy complaint against Roach's son was dismissed just over a week later, on May 15.
II. Procedural Background
On May 6, 2015, represented by attorneys Harrington, Soto, Anhalt, and Isgitt *211 (collectively, the Attorneys), Roach filed suit as next friend of her son and a putative class of other similarly situated minor children, their parents, and unknown adults against the various public officials and others.
About three weeks later, on May 30, the Legislature passed HB 2398, which decriminalized truancy and instituted new procedures for initiating civil truancy proceedings.[5] Additionally, HB 2398 provided that all criminal truancy complaints or convictions and all other documents relating to an offense would be automatically expunged.[6] The new law would become effective on September 1, 2015.
On June 24, 2015, Roach filed a first supplemental petition adding Brady as next friend of his son.[7] Roach and Brady (collectively, the Parents) filed several amended petitions, adding and dropping defendants and revising their claims. The live petition at the time of the final judgment was the sixth amended petition.
A. The Motions at Issue
In their sixth amended petition, the Parents requested declaratory and prospective injunctive relief as to eighteen counts of alleged ultra vires acts by appellees and alleged violations of due process in connection with the FBISD's former truancy enforcement procedures and the operation of the Truancy Court. The Parents also sought certification of a class of similarly situated individuals, as well as attorney's fees, costs, and expenses.
Appellees filed various motions to dismiss the Parents' claims. Those appellees sued in their official capacity as the Fort Bend County Judge and County Commissioners, the Precinct 3 Justice of the Peace, and the Truancy Court magistrate (the Fort Bend County Defendants)[8] filed a plea to the jurisdiction. Those appellees sued in their official capacity as FBISD trustees (the FBISD Defendants)[9] filed a plea to the jurisdiction and motion for sanctions and attorney's fees. Matthew "Kyle" Dobbs, sued in his official capacity as the Chief Probation Officer of the Fort Bend County Juvenile Probation Department (Dobbs), filed a Rule 91A motion to dismiss, a plea to the jurisdiction, and a motion for attorney's fees and sanctions.
Those appellees sued in their official capacity as members of the Fort Bend County Juvenile Board (the Judicial Defendants)
*212 [10] filed a Rule 91a motion to dismiss and a motion for attorney's fees and sanctions. Unlike the other public officials, the Judicial Defendants also filed a Texas Citizens' Protection Act (TCPA) motion to dismiss.
In response to the Judicial Defendants' TCPA motion to dismiss, the Parents filed a document titled "Counter Anti-SLAPP Motion, Motion for Sanctions, and Attorney's Fees" against the Judicial Defendants.[11] The Parents later filed a similarly titled motion to dismiss in which they requested the same relief and additionally sought dismissal of the Judicial Defendants' and Dobbs' Rule 91a motions (collectively, the counter-TCPA motion). In the counter-TCPA motion, the Parents also sought sanctions and attorney's fees under the TCPA against both the Judicial Defendants and Dobbs.
B. The Proceedings in the Trial Court
The trial court held a hearing on the parties' various motions on August 26, 2017. During the hearing, the court indicated that it would deny the Parents' counter-TCPA motion, but because not all issues were reached, the hearing was continued until the next available date on the court's docket. Although the court declined to sign an order denying the Parents' counter-TCPA motion on August 26, the Parents filed an interlocutory appeal that same day. The hearing resumed on September 22, at which time the trial court orally rendered judgment on the remaining issues, including sanctions and attorney's fees.
On September 27, 2017, the trial court signed a final judgment granting the appellees' dispositive motions; denying the Parents' counter-TCPA motion; dismissing the lawsuit with prejudice; awarding certain appellees attorney's fees and costs; and assessing monetary sanctions against Roach, Brady, and the Attorneys. That same day, the Parents filed a second interlocutory appeal of the trial court's order denying their counter-TCPA motion.[12]
The Parents and the Attorneys then filed post-judgment motions including a motion for new trial, motion to modify the judgment, and request for findings of fact and conclusions of law. The Parents and the Attorneys jointly appealed the final judgment on December 21, 2016.
ISSUES AND ANALYSIS
On appeal, the Parents and the Attorneys raise twelve issues: (1) the final judgment is void because it was signed after the Parents appealed the denial of their counter-TCPA motion staying all proceedings in the trial court; (2) the trial judge should have been disqualified because he was a party in his official capacity as a Juvenile Board member and had a personal interest in the litigation; (3) the trial court failed to adequately specify the basis for the sanctions awarded; (4) the trial court erred in granting sanctions against *213 the Parents and the Attorneys for filing the lawsuit; (5) the trial court erred in failing to explain the reasons for sanctioning the Parents; (6) the sanctions awarded were excessive; (7) the FBISD Defendants, Judicial Defendants, and Dobbs are not entitled to recover appellate attorney's fees; (8) the trial court erred in denying the Parents' TCPA motion; (9) the trial court erred in granting the Judicial Defendants' TCPA motion; (10) the trial court erred in granting the FBISD Defendants' and Fort Bend County Defendants' pleas to the jurisdiction; (11) the trial court erred in granting the Judicial Defendants' and Dobbs' Rule 91a motions; and (12) the trial court erred in denying class certification.
We address issues three through seven related to sanctions and appellate attorney's fees last, but otherwise address the issues in the order presented, beginning with issue one concerning whether the final judgment is void.
I. The Validity of the Final Judgment
In their first issue, The Parents and the Attorneys contend that the final judgment is void because it was signed after the Parents appealed the denial of their counter-TCPA motion, which had the effect of staying all proceedings in the trial court. See Tex. Civ. Prac. & Rem. Code § 51.014(b) (providing that an interlocutory appeal of the denial of a TCPA motion to dismiss stays all proceedings in the trial court pending resolution of that appeal).
A. The TCPA's Purpose and Procedures
The TCPA's purpose is to "encourage and safeguard the constitutional rights" of people to "petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" while simultaneously protecting an individual's right "to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002 ; see In re Lipsky , 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding) (observing that the TCPA's purpose "is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits"). To accomplish its purpose, the TCPA contemplates a summary process, requiring judicial review of the pleadings and limited evidence, typically within 150 days following service. Lipsky , 460 S.W.3d at 589-90.
Generally, once a TCPA motion to dismiss is filed, a hearing on the motion "must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion." Tex. Civ. Prac. & Rem Code § 27.004(a). In the event that the court cannot hold a hearing in the time required by subsection (a), "the court may take judicial notice that the court's docket conditions required a hearing at a later date, but in no event shall the hearing occur more than 90 days after service of the motion" unless the court allows discovery as provided in subsection (c). See id. § 27.004(b).
The trial court must rule on a TCPA motion to dismiss "not later than the 30th day following the date of the hearing on the motion." Id. § 27.005(a). If the court does not rule on a TCPA motion to dismiss within the time prescribed, "the motion is considered to have been denied by operation of law and the moving party may appeal." Id. § 27.008(a). A party may file an interlocutory appeal from the denial of a TCPA motion to dismiss. Id. § 51.014(a)(12). An interlocutory appeal of the denial of a TCPA motion to dismiss *214 "stays all other proceedings in the trial court pending resolution of that appeal." Id. § 51.014(b).
B. The Final Judgment is Not Void
According to the Parents and the Attorneys, the trial judge indicated at the August 26 hearing that he was going to deny the Parents' counter-TCPA motion but did not make a final ruling, and therefore the motion was denied by operation of law on September 26, thirty days after the hearing date. See id. § 27.008(a).[13] The Parents and the Attorneys assert that the Parents' August 26 notice of interlocutory appeal, although prematurely filed, was effective to stay all proceedings in the trial court after September 26. See § 51.014(b) ; see also Tex. R. App. P. 27.1(a) ("In a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal."). Because the final judgment was signed on September 27, after the proceedings were presumably stayed, the Parents and the Attorneys contend that the judgment is void.
Contrary to the Parents' premise that the trial court's September 27 judgment is void, a judgment signed during a stay imposed by section 51.014 is not void, but is merely voidable. Roccaforte v. Jefferson Cty. , 341 S.W.3d 919, 923 (Tex. 2011). Accordingly, a party must lodge a timely objection in the trial court to preserve a complaint about a trial court's actions in violation of a stay. See ids="7320519" index="9" url="https://cite.case.law/sw3d/341/919/#p923">id. at 923-24. The Parents and the Attorneys have not directed us to a timely objection to the trial court's September 27 judgment in the record, and we have found none. Indeed, the record shows that the Parents filed post-judgment requests for relief after the judgment was signed. Assuming for purposes of argument that the August 26 notice of appeal initiated a stay, the Parents' failure to complain about the trial court's action in rendering a final judgment during the stay waived any error related to the stay. See ids="7320519" index="10" url="https://cite.case.law/sw3d/341/919/#p923">id. We therefore overrule the Parents' and the Attorneys' first issue.
II. The Motion to Disqualify the Trial Judge
The Parents initially sought to recuse the trial judge, the Honorable Brady Elliott, because he was also a member of the Juvenile Board. After the motion to recuse was denied, the Parents filed a motion to disqualify Judge Elliott. The Parents also amended their petition to add Judge Elliott and all of the district and county judges as defendants because they were all members of the Juvenile Board by virtue of their position as judges.[14] An assigned judge denied the motion to disqualify. The claims against Judge Elliott in his official capacity were then severed from this case and assigned a new cause number.[15]
In their second issue, the Parents contend that Judge Elliott should have been disqualified because he was a party in his official capacity as a member of the Juvenile Board. The Parents allege that Judge *215 Elliott's participation in the Juvenile Board's decisions to authorize, fund, and support the Truancy Court demonstrate that he has a personal or pecuniary interest in the case. In support of their allegations, the Parents point to Juvenile Board meeting minutes in 2011 reflecting Judge Elliott's participation in discussions relating to funding the Truancy Court.[16] Appellees respond that the Parents offer only conclusory allegations and no proof that Judge Elliott should be disqualified.
The Texas Constitution provides that "[n]o judge shall sit in any case wherein the judge may be interested." Tex. Const. art. V, § 11 ; see also Tex. R. Civ. P. 18b(a)(2) (providing that a judge must be disqualified in any proceeding in which "the judge knows that, individually or as a fiduciary, the judge has an interest in the subject matter in controversy"). Disqualification can be raised at any time, and any order involving the exercise of discretion by a constitutionally disqualified judge is void. Buckholts Indep. Sch. Dist. v. Glaser , 632 S.W.2d 146, 148 (Tex. 1982).
A judge is not disqualified merely by being named as a defendant, because "[t]o hold that merely naming a judge as a party would disqualify him would put power in the hands of litigants to frustrate our judicial system." Cameron v. Greenhill , 582 S.W.2d 775, 776 (Tex. 1979) (per curiam). A disqualifying interest is an interest, however small, which rests on a direct pecuniary or personal interest in the result of the case. Id. The interest must be direct and immediate, and not contingent, remote, or speculative. Love v. Wilcox , 119 Tex. 256, 28 S.W.2d 515, 519 (1930) ; Nueces Cty. Drainage & Conservation Dist. No. 2 v. Bevly , 519 S.W.2d 938, 951 (Tex. Civ. App.-Corpus Christi 1975, writ ref'd n.r.e.). Absent a direct pecuniary or personal interest, a judge has a duty to try a case, even though the judge may have an interest in the questions to be determined. See Love , 28 S.W.2d at 518-19 (stating that a judge who is not disqualified has a duty to sit in a case, even if the judge is "embarrassed" to proceed due to a "personal interest adverse to the appellants"); see also Horn v. Gibson , 352 S.W.3d 511, 514 (Tex. App.-Fort Worth 2011, pet. denied) ("A remote or problematic interest or one merely in the legal question involved will not suffice."); Palais Royal, Inc. v. Partida , 916 S.W.2d 650, 653 (Tex. App.-Corpus Christi 1996, orig. proceeding) ("[A] judge's interest merely in the legal question to be determined is not disqualifying.").
The Parents argue that Judge Elliott has a personal interest in the case because he would be ruling on matters affecting himself and the other Juvenile Board members. In this lawsuit, the only relief the Parents request is prospective injunctive relief preventing the appellees from engaging in allegedly ultra vires acts concerning truancy enforcement in the future. In effect, the Parents seek an injunction requiring appellees to comply with the law. But, judges are already ethically bound to comply with the law and may be subject to disciplinary actions or removal for violations, so affirmative injunctive relief requiring Judge Elliott to comply with the law imposes no additional duty or burden on him. See Tex. Const. art. 5, § 1-a (6); Tex. Code Jud. Conduct, Canons 2(A), 3(B)(2), reprinted in Tex. Gov't Code tit. 2, subtit. G., App. B;
*216 Kennedy v. Wortham , 314 S.W.3d 34, 37 (Tex. App.-Texarkana 2010, pet. denied) (holding that trial judge had no personal interest in lawsuit requesting injunctive relief prohibiting "all judges from discriminating" because judges are already prohibited by law and ethical standards from discriminating).
The Parents also argue that Judge Elliot has a pecuniary interest in finding that the Juvenile Board did not commit ultra vires acts, because if such acts were found to be intentional, then immunity is waived and a finding of ultra vires acts would subject Judge Elliott to liability. The Parents' speculative and unsupported argument that Judge Elliott might in some future scenario face liability in an action that has not yet occurred fails to allege a disqualifying pecuniary interest. See, e.g. , Love , 28 S.W.2d at 519 (explaining that "[t]he interest which will disqualify a judge must be direct and immediate, and not contingent and remote" (citation omitted) ); Narro Warehouse, Inc. v. Kelly , 530 S.W.2d 146, 149 (Tex. Civ. App.-Corpus Christi 1975, writ ref'd n.r.e.) (explaining that a pecuniary interest sufficient to disqualify a judge from sitting in a case must be direct, real, and certain, and must be capable of monetary valuation).
In this case, Judge Elliott has no direct pecuniary interest because appellants seek no money damages. See Kennedy , 314 S.W.3d at 37. Moreover, that Judge Elliott is involved in related litigation with appellants in the severed case does not require his disqualification. See Narro Warehouse , 530 S.W.2d at 149-50 ; see also Tex. Elec. Serv. Co. v. Boyce , 486 S.W.2d 111, 113-14 (Tex. Civ. App.-El Paso 1972, no writ) (holding that judge in condemnation litigation involving an easement for an electrical transmission line would not obtain any pecuniary benefit from the case and so was not disqualified, even though judge was involved in another, similar proceeding involving the same electrical easement over the judge's own land). Because the Parents have failed to allege or present any evidence that Judge Elliott must be disqualified, we overrule their second issue.
III. The Denial of the Parents' Counter-TCPA Motion
In their eighth issue, the Parents contend that the trial court erred in denying their counter-TCPA motion because they established by a preponderance of the evidence that the TCPA motion to dismiss filed by the Judicial Defendants and the Rule 91a motion to dismiss filed by Dobbs were legal actions requesting the legal relief of ending the Parents' lawsuit.
A. Applicable Law and Standard of Review
The TCPA provides for dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association" as defined by the statute. Tex. Civ. Prac. & Rem. Code § 27.003(a) ; Lipsky , 460 S.W.3d at 586-87. The movant has the initial burden to show "by a preponderance of the evidence" that the nonmovant's claim is based on, relates to, or is in response to the movant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. Tex. Civ. Prac. & Rem. Code § 27.005(b). If the movant demonstrates that the nonmovant's claim implicates one of these rights, the burden shifts to the nonmovant to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." Id. § 27.005(c). Even if the nonmovant satisfies the second step, the court shall dismiss the action if the movant "establishes by a preponderance of the evidence each essential element of a valid defense" to the nonmovant's claim. Id. § 27.005(d).
*217 A successful movant is entitled to an award of "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require" Id. § 27.009(a)(1). Additionally, the movant is entitled to "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions." Id. § 27.009(a)(2).
We review de novo the trial court's ruling on a TCPA motion to dismiss. Cox Media Grp., LLC v. Joselevitz , 524 S.W.3d 850, 859 (Tex. App.-Houston [14th Dist.] 2017, no pet.). We also review de novo issues of statutory construction. Lippincott v. Whisenhunt , 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). When construing the TCPA, our objective is to give effect to the Legislature's intent. Id. We presume that the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted. ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 899 (Tex. 2017) (per curiam). We must also keep in mind the directive that the TCPA is to be construed "liberally to effectuate its purpose and intent fully." Lippincott , 462 S.W.3d at 509 (quoting Tex. Civ. Prac. & Rem. Code § 27.011 ).
B. Application of Law to Facts
The Parents contend that the Judicial Defendants' and Dobbs' motions to dismiss were "legal actions" requesting the legal relief of ending the Parents' lawsuit. Further, the Parents assert that their counter-TCPA motion establishes by a preponderance of the evidence that their lawsuit concerned the exercise of the right to petition and right of free speech regarding a matter of public concern, namely appellees' unauthorized operation of the Truancy Court.
In the trial court, the Judicial Defendants and Dobbs argued, among other things, that a "legal action" as that term is defined in the TCPA refers only to a claim or counterclaim, and not to a motion to dismiss like the Parents' counter-TCPA motion. The Parents respond that the Judicial Defendants' and Dobbs' argument that a "legal action" does not include a motion to dismiss filed in response to a motion to dismiss is an attempt to impermissibly narrow the scope of the TCPA.
The TCPA defines "legal action" to mean "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." Tex. Civ. Prac. & Rem. Code § 27.001(6).
Plainly, a motion to dismiss is not a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim. The Parents' argument succeeds only if the phrase "any other judicial pleading or filing that requests legal or equitable relief" is construed to include a motion to dismiss. See id. To make that determination, the Parents acknowledge that we must "look to the statute's plain language" to give effect to the Legislature's intent as expressed through the statutory text. Lippincott , 462 S.W.3d at 509.
Recently, our sister court directly addressed whether the TCPA's definition of "legal action" includes a counter-motion to dismiss a TCPA motion to dismiss. See Paulsen v. Yarrell , 537 S.W.3d 224, 231-33 (Tex. App.-Houston [1st Dist.] 2017, pet. denied). Applying the rule of statutory construction known as ejusdem generis , the Paulsen court concluded that the catch-all "any other judicial pleading or filing that requests legal or equitable relief" could not be construed to include a countermotion to dismiss because the preceding enumeration of the more specific terms "lawsuit," "cause of action," "petition,"
*218 "complaint," "cross-claim," and "counterclaim" reflected that "each element of this class is a procedural vehicle for the vindication of a legal claim, in a sense that is not true for a motion to dismiss." Id. at 233 (explaining that when more specific terms are followed by a catch-all "other," "the doctrine of ejusdem generis teaches that the latter must be limited to things like the former"). The Paulsen court went on to explain that to hold otherwise would undermine TCPA's intended purpose and procedures:
Were we to conclude otherwise, the proliferation of "piecemeal or seriatim 'motions to dismiss' attacking myriad 'legal actions' that consist merely of individual filings within or related to a lawsuit, as opposed to the underlying lawsuit and substantive claims that are the Act's core focus" would result in application of the TCPA that "strays from-and, indeed, undermines through cost and delay-its manifest purpose to secure quick and inexpensive dismissal of meritless 'legal actions' that threaten expressive freedoms." [In re ] Elliott , 504 S.W.3d [455,] 480 [ (Tex. App.-Austin 2016, orig. proceeding) ] (Pemberton, J., concurring).
Furthermore, Paulsen's proposed interpretation of "legal action" could allow a plaintiff to defeat a motion to dismiss under the TCPA while avoiding the requirement to show that his claim has merit by establishing a prima facie case for each essential element of his claim. See Tex. Civ. Prac. & Rem. Code § 27.005. Paulsen's proposed interpretation would frustrate the attorney's fees provisions of the TCPA in a manner that finds no support in the statute's text. The TCPA mandates an award of attorney's fees and costs for the successful movant, but it only requires such an award to the nonmovant on a showing that the motion to dismiss "is frivolous or solely intended to delay." Tex. Civ. Prac. & Rem. Code § 27.009(b). Paulsen's interpretation would allow a nonmovant to obtain a mandatory award of attorney's fees (as he seeks to obtain in this case) without a showing that the initial TCPA motion to dismiss was frivolous or solely intended to delay.
Id. at 233-34. Accordingly, the Paulsen court held that "the TCPA's dismissal mechanism does not authorize a countermotion to dismiss as a substitute for a standard response in opposition" and affirmed the trial court's denial of a countermotion to dismiss filed in response to a TCPA motion to dismiss. Id. at 234.
We agree with the Paulsen court's reasoning and similarly hold that a TCPA motion to dismiss is not a "legal action" under section 27.001(6) and, accordingly, the TCPA does not authorize the Parents' counter-TCPA motion in response to the Judicial Defendants' TCPA motion to dismiss. See ids="12409247" index="42" url="https://cite.case.law/sw3d/537/224/#p231">id. We overrule the Parents' eighth issue.
IV. The Grant of the Judicial Defendants' TCPA Motion
In their ninth issue, the Parents contend that the trial court erred in granting the Judicial Defendants' TCPA motion because the Parents presented clear and specific evidence establishing a prima facie case for their ultra vires claims. See Tex. Civ. Prac. & Rem. Code § 27.005(c). The Parents also raise a threshold issue of first impression in a Texas state court: whether government officials sued in their official capacity are entitled to invoke the TCPA in response to a citizen's lawsuit involving ultra vires claims.
To satisfy the TCPA, the Judicial Defendants had the initial burden to show by a preponderance of evidence that the Parents' lawsuit was a legal action that was *219 "based on, relates to, or is in response to" the Judicial Defendants' exercise of the right of free speech, the right to petition, or the right of association. See Tex. Civ. Prac. & Rem. Code § 27.005(b) ; Coleman , 512 S.W.3d at 898-99. The TCPA defines the " '[e]xercise of the right of association" to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Id. § 27.001(2). A " '[c]ommunication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.' " Id. § 27.001(1). The TCPA defines the " '[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). A " '[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." Id. § 27.001(7).
The Parents' allegations against the Judicial Defendants include an allegation that the Judicial Defendants "did approve, by and through their binding votes, in direct coordination with others, in conjunction with and in support of" a scheme that "provided for" a series of "ultra vires acts." In their motion to dismiss, the Judicial Defendants asserted that the Parents sued them for exercising their rights to free speech and association concerning the Juvenile Board's actions related to the Truancy Court involving: (1) public discussion of the Saved by the Bell program and the Truancy Court; (2) the drafting and passage of written resolutions or agreements; and (3) publicly voting. Among other things, the Judicial Defendants argued that they were sued in their official capacity, meaning that they were only being sued for actions taken during Juvenile Board meetings, and thus their resolutions or agreements constitute protected communications concerning "the making or submitting of a statement or document." See id. § 27.001(1). Further, the Judicial Defendants asserted that any allegation concerning "collective" decision making, or group development of a plan concerning the Truancy Court, only occurred in an open session meeting with the Board discussing, or voting upon, written resolutions or plans, which likewise constitute protected communications concerning a matter of public concern involving community well-being, the government, and public officials. See id. §§ 27.001(1), (3), (7).[17]
We conclude the Judicial Defendants have satisfied their statutory burden to show that the Parents' lawsuit is "based on, relates to, or is in response to" the Judicial Defendants' exercise of the right to free speech concerning communications "made in connection with a matter of public concern," namely, the enforcement of truancy laws and the operation of the Truancy Court, as well as the Judicial Defendants' exercise of the right of association as members of the Juvenile Board engaging in communications "between individuals who join together to collectively express, promote, pursue, or defend common interests." See id. 27.003(a); Hersh v. Tatum , 526 S.W.3d 462, 467 (Tex. 2017) ("When it is clear from the plaintiff's pleadings that the action is covered by the *220 [TCPA], the defendant need show no more.").
On appeal, the Parents do not argue that the Judicial Defendants' motion to dismiss fails to satisfy the TCPA's statutory requirements; rather, they make a public policy argument that government officials should not be entitled to invoke the TCPA's protection. The Parents argue that every suit to prevent a government official from acting outside the law would almost always involve either an exercise of the right of association, free speech, or petition; consequently, they assert that extending the TCPA to government officials would create an additional and unreasonable bar for plaintiffs and would "likely eviscerate the ultra vires doctrine."
In response, the Judicial Defendants acknowledge that Texas courts have not yet addressed whether the TCPA applies to public officials acting in their official capacity, but assert that California's anti-SLAPP statute is "very similar" and has been held to apply to public officials. See Vargas v. City of Salinas , 46 Cal.4th 1, 92 Cal.Rptr.3d 286, 205 P.3d 207, 216 (2009) (holding that California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, "extends to statements and writing of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity"). The Parents dismiss Vargas and note that California amended its anti-SLAPP statute to exempt certain lawsuits brought in the public interest or on behalf of the general public from their anti-SLAPP statute. See Cal. Code Civ. Proc. § 415.17(b). According to the Parents, "the overreach provoking California's decision to restrict its statute is clearly present here."
Regardless of any perceived salutary purposes of California's law, however, this court is guided by the plain and unambiguous text of the TCPA, which does not include a similar exemption for public interest lawsuits. See Tex. Civ. Prac. & Rem. Code § 27.010. This court "may not judicially amend a statute by adding words that are not contained in the language of the statute." Lippincott , 462 S.W.3d at 508. Instead, we "must apply the statute as written." Id.
The TCPA requires only that the communications at issue relating to the exercise of the right of free speech are "in connection with" "issues related to" matters of public concern. See Coleman , 512 S.W.3d at 900. Further, courts are instructed to construe the TCPA liberally "to effectuate its purpose and intent fully." See Tex. Civ. Prac. & Rem. Code § 27.011(b). The Parents point to nothing in the TCPA or Texas law compelling otherwise, and we thus hold that the TCPA's plain language does not preclude its application to government officials sued in their official capacity.
We next turn to the substance of the Parents' issue, namely, their contention that they established a prima facie case for prospective relief based on ultra vires acts committed by the Juvenile Board and Dobbs. Because the Judicial Defendants satisfied their burden to show that the Parents' claims related to the Judicial Defendants' exercise of the right of free speech and right of association, the burden shifted to the Parents to produce "clear and specific evidence [of] a prima facie case for each essential element" of their claims. See id. § 27.005(c) ; Lippincott , 462 S.W.3d at 510 ; Lipsky , 460 S.W.3d at 590-91.
The Parents' entire argument in support of their issue is contained in one sentence: "The evidence established that the operations of the unauthorized Truancy Court *221 would not likely have occurred without the collective action of the Juvenile Board." The Parents then cite to pages of their statement of facts, but do not otherwise explain how they have satisfied their burden to establish a prima facie case for each essential element of their claims by "clear and specific evidence." See Tex. Civ. Prac. & Rem. Code § 27.005(c). In the trial court, appellants filed no response to the Judicial Defendants' motion to dismiss, only the improper counter-TCPA motion, which does not address the Parents' statutory burden at all. The Parents' bare, baseless opinions are not a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA. See Lipsky , 460 S.W.3d at 592. Consequently, the trial court was required to dismiss the Parents' claims against the Judicial Defendants and Dobbs. See ids="6872091" index="61" url="https://cite.case.law/sw3d/460/579/#p589">id. at 587. We overrule the Parents' ninth issue.
V. The Grant of the FBISD Defendants' and the Fort Bend County Defendants' Pleas to the Jurisdiction
In their tenth issue, the Parents contend that the trial court erred in granting the FBISD Defendants' and the Fort Bend County Defendants' pleas to the jurisdiction in response to the Parents' requests for declaratory and prospective injunctive relief from these appellees' allegedly ultra vires acts. The FBISD Defendants and the Fort Bend County Defendants respond that their pleas were properly granted because the repeal of Texas's former criminal truancy laws rendered the Parents' claims moot. The FBISD Defendants also argue that the Parents did not plead viable ultra vires claims, the Parents lack standing, the Parents' claims for prospective relief were either moot or unripe, and that the FBISD Defendants were statutorily immune from the Parents' claims. Because we conclude that the Parents' claims are moot, we need not address these arguments.
A. Standard of Review and Applicable Law
A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a specific cause of action. See Texas Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 225-26 (Tex. 2004). The plaintiff has the initial burden of alleging facts that would affirmatively demonstrate the trial court's jurisdiction to hear the cause. Id. at 226. Mere legal conclusions unsupported by facts are insufficient. See Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality , 307 S.W.3d 505, 515-16 & n.7 (Tex. App.-Austin 2010, no pet.).
The issue of whether a court has jurisdiction is a matter of law that is reviewed de novo. Miranda , 133 S.W.3d at 226. In reviewing a grant or denial of a plea to the jurisdiction, we determine whether the plaintiff's pleadings, construed in favor of the plaintiff, allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case. Id. Evidence relevant to the jurisdictional issue can be introduced and considered at the plea to the jurisdiction stage if needed to determine jurisdiction. Id. at 227. The plea to the jurisdiction must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. Heckman v. Williamson Cty. , 369 S.W.3d 137, 150 (Tex. 2012).
Subject matter jurisdiction requires that the party bringing the suit have standing, that there is a live controversy between the parties, and that the case be justiciable.
*222 State Bar of Tex. v. Gomez , 891 S.W.2d 243, 245 (Tex. 1994). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." Bonham State Bank v. Beadle , 907 S.W.2d 465, 467 (Tex. 1995). A case becomes moot if, since the time of filing, a controversy ceases to exist because the issues are no longer "live" or the parties lack a legally cognizable interest in the outcome. Heckman , 369 S.W.3d at 162. We may not decide moot controversies because the Texas Constitution prohibits advisory opinions on abstract questions of law. See Klein v. Hernandez , 315 S.W.3d 1, 3 (Tex. 2010) (citing Tex. Const. art. II, § 1 ; Brooks v. Northglen Ass'n , 141 S.W.3d 158, 164 (Tex. 2004) ).
Under the Uniform Declaratory Judgments Act, a person whose rights, status, or other legal relations are affected by a statute or municipal ordinance may have determined any question of construction or validity arising under the statute or ordinance and "obtain a declaration of rights, status, or other legal relations thereunder." See Tex. Civ. Prac. & Rem. Code § 37.004(a). A declaratory judgment is appropriate when a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought. Bonham State Bank , 907 S.W.2d at 467. But the Act gives a court no power to decide hypothetical or contingent situations or to determine questions not essential to the decision of an actual controversy. City of Richardson v. Gordon , 316 S.W.3d 758, 761 (Tex. App.-Dallas 2010, no pet.) ; Robinson v. Alief Indep. Sch. Dist. , 298 S.W.3d 321, 324 (Tex. App.-Houston [14th Dist.] 2009, pet. denied).
B. Application of Law to Facts
In this case, the Parents complain that the FBISD Defendants and the Fort Bend County Defendants allegedly participated in a scheme to engage in ultra vires acts in connection with criminal truancy enforcement and the operation of an unauthorized Truancy Court. The Parents requested (1) declarations that the alleged acts were ultra vires and violations of due process, and (2) prospective injunctive relief prohibiting these acts in the future.
As noted in the statement of facts, four months after the Parents filed this lawsuit, the Legislature permanently did away with criminal truancy as of September 1, 2015, when HB 2398 became effective. Since then, Texas law has mandated that "[t]ruant conduct may be prosecuted only as a civil case in a truancy court." Tex. Fam. Code § 65.003(b). The change in the law not only did away with criminal truancy, it completely revamped the civil procedures for handling truancy cases.[18] Further, all convictions, complaints, and documents relating to a truancy offense under the former law must be expunged. Tex. Code Crim. Proc. art. 45.041.
As a result of these legislative revisions, the County's criminal truancy system no longer exists. The cases against the Parents' sons were dismissed, and the Parents seek no money damages for any injury sustained by their children. Accordingly, the Parents' request for declaratory relief concerning the past conduct of the FBISD Defendants and the Fort Bend County *223 Defendants in connection with the former criminal truancy system is moot because a justiciable controversy no longer exists and a decision on past conduct would be advisory only. See Speer v. Presbyterian Children's Home and Serv. Agency , 847 S.W.2d 227, 229-30 (Tex. 1993) (holding that plaintiff's request for declaratory and injunctive relief concerning alleged discriminatory hiring practices was moot after defendant changed its policy and abolished the position plaintiff sought); City of Richardson , 316 S.W.3d at 762 (holding that request for declaratory relief was rendered moot after city charter provision was amended and any decision concerning past violations would be advisory only); Robinson , 298 S.W.3d at 324 (holding that plaintiff's claim for declaratory judgment concerning alleged constitutional violations was moot when plaintiff was no longer subject to the complained-of misconduct).
The Parents argue, however, that the decriminalization of truancy does not moot their request for prospective injunctive relief because certain statutory requirements relating to school attendance, truancy court proceedings, authorized truancy courts, and the duties of a magistrate that existed under the former criminal system remain in effect and "could continue" to be violated. For example, the Parents assert that the FBISD Defendants and the Fort Bend County Defendants could continue to: issue fraudulent and statutorily noncompliant truancy referrals; create an unauthorized stand-alone "Truancy Court"; have a magistrate function as a truancy court; or allow an actual truancy court judge to issue blanket referrals to the magistrate. Therefore, the Parents assert, the alleged wrongdoing that occurred in connection with criminal truancy enforcement under the former criminal system is "capable of recurring under the civil system and would still be illegal."
In support of this argument, the Parents rely on Matthews ex rel. M.M. v. Kountze Independent School District , 484 S.W.3d 416 (Tex. 2016). At issue in Matthews was whether a suit brought by middle school and high school cheerleaders, who had been prohibited by Kountze Independent School District (the District) from displaying banners containing religious signs or messages at school-sponsored events, was moot. Id. at 417. The District filed a plea to the jurisdiction asserting mootness in light of its subsequent adoption of Resolution and Order No. 3, which provided that the District is "not required to prohibit messages on school banners ... that display fleeting expressions of community sentiment solely because the source or origin of such message is religious," but "retains the right to restrict the content of school banners." Id. The trial court denied the plea, but the court of appeals held that the suit was moot because the District had "voluntarily discontinued" its previous prohibition on such banners. Id.
On review, the supreme court explained that a defendant's cessation of the challenged conduct does not, in itself, deprive a court of jurisdiction, because if it did, "defendants could control the jurisdiction of courts with protestations of repentance and reform, while remaining free to return to their old ways." Id. at 418. Such a result "would obviously defeat the public interest in having the legality of the challenged conduct settled." Id. The supreme court acknowledged, however, that "dismissal may be appropriate when subsequent events make 'absolutely clear that the challenged conduct could not reasonably be expected to recur.' " Id. (citation and internal alteration omitted). The supreme court cautioned that the burden on the moving party is a heavy one. Id.
After surveying the law and examining the evidence presented, the supreme court *224 concluded that "the District's voluntary abandonment here provides no assurance" that it would not resume the challenged conduct in the future. Id. at 420. A significant factor in the supreme court's analysis was the District's continued defense of the constitutionality of its prohibition on the religious content of the cheerleaders' banners and its authority to restrict such content. Id. at 419. The supreme court also noted that "Resolution and Order No. 3 only states the District is not required to prohibit the cheerleaders from displaying such banners, and reserves to the District unfettered discretion in regulating those banners-including the apparent authority to do so based solely on their religious content." Id. at 420. Accordingly, the supreme court held that the cheerleaders' suit was not moot. Id.
Unlike Matthews , this case does not involve a voluntary cessation of challenged conduct that may recur absent the requested injunctive relief; instead, it involves a legislatively mandated overhaul of the way truancy cases are handled in Texas and the expunction of all past truancy convictions or complaints. Even before the new legislation became effective, FBISD informed the Parents that they were immediately suspending truancy referrals, and there have been no criminal truancy referrals since that time. Moreover, all of the alleged ultra vires and unconstitutional acts in the Parents' live petition concern conduct allegedly taken within the framework of the former criminal truancy system. The Parents make no allegations that any ultra vires act has occurred under the new civil system, and they have offered no evidence of any such actions. Indeed, in the trial court, the Parents conceded that even after more than a year of litigation, they had no evidence of any present wrongdoing in the new civil system.
At oral argument, the Parents and the Attorneys also argued that this case is analogous to Kessling v. Friendswood Independent School District , 302 S.W.3d 373, 380-81 (Tex. App.-Houston [14th Dist.] 2009, pet. denied). In Kessling , this court held that the plaintiff's request for declaratory and injunctive relief concerning alleged violations of the Texas Open Meetings Act (TOMA) were not moot or unripe, reasoning that because the plaintiff explicitly alleged of a pattern and practice of certain types of TOMA violations in the past, and sought injunctive relief to prohibit future violations that were "of the same nature" as the past violations, the two types of claims were "inextricably intertwined." See ids="7299106" index="93" url="https://cite.case.law/sw3d/302/373/#p380">id. In contrast, as we have discussed, the Parents request declaratory and injunctive relief concerning County's enforcement of criminal truancy, which ended when criminal truancy was legislatively abolished and replaced with civil truancy procedures, and the Parents have made no allegations of any violations of the County's civil truancy enforcement system and have no evidence of any violations. Thus, unlike in Kessling , the alleged past violations are not "of the same nature" or "inextricably intertwined."
Assuming that the Parents adequately alleged ultra vires actions in connection with past enforcement of criminal truancy in Fort Bend County, it is "absolutely clear" that the challenged conduct concerning the former criminal truancy system "cannot reasonably be expected to recur" and so is moot. See Matthews , 484 S.W.3d at 418 ; Robinson , 298 S.W.3d at 326-27 (holding that plaintiff's request for injunctive relief was moot absent any evidence of an existing or continuing present injury or a reasonable expectation that the defendant's challenged conduct would recur); Trulock v. City of Duncanville , 277 S.W.3d 920, 926-28 (Tex. App.-Dallas 2009, no pet.) (holding that no live controversy *225 existed after challenged ordinance was repealed, amended, and partially modified by new ordinance and plaintiff offered no argument or evidence of action taken against him under new ordinance). We therefore hold that the Parents' request for declaratory and prospective injunctive relief concerning alleged ultra vires acts and violations of due process are moot and the trial court did not err by granting the FBISD Defendants' and the Fort Bend County Defendants' pleas to the jurisdiction. We overrule the Parents' tenth issue.
VI. The Grant of the Judicial Defendants' and Dobbs's Rule 91a Motions to Dismiss
In their eleventh issue, the Parents contend that the trial court erred in granting the Judicial Defendants' and Dobbs's Rule 91a motions. See Tex. R. Civ. P. 91a. Because we have affirmed the trial court's dismissal of the Parents' claims against the Judicial Defendants based on the TCPA, we need address only the trial court's grant of Dobbs's Rule 91a motion. See Tex. R. Civ. P. 91a.9 ("This rule is in addition to, and does not supersede or affect, other procedures that authorize dismissal.").
Rule 91a allows a party, with exceptions not applicable here, to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. We review de novo whether a cause of action has any basis in law or fact. City of Dallas v. Sanchez , 494 S.W.3d 722, 724-25 (Tex. 2016) (per curiam) (citing Wooley v. Schaffer , 447 S.W.3d 71, 75-76 (Tex. App.-Houston [14th Dist.] 2014, pet. denied) ). To determine whether the cause of action has a basis in law or fact, we construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleading. Wooley , 447 S.W.3d at 76. Whether the dismissal standard is satisfied depends solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59. Tex. R. Civ. P. 91a.6; see Sanchez , 494 S.W.3d at 724.
Governmental immunity provides broad protection to the state and its officers, but suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity. City of El Paso v. Heinrich , 284 S.W.3d 366, 372 (Tex. 2009). To fall within this ultra vires exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." Id. Merely alleging "ultra vires" or "unconstitutional" conduct by a state official does not mean that the claimant has avoided sovereign immunity and invoked a trial court's inherent jurisdiction; the claimant must allege facts that actually constitute ultra vires or unconstitutional acts. See Creedmoor-Maha , 307 S.W.3d at 515-16. Moreover, the proper defendant in an ultra vires action is the official who allegedly acted without authority, not the governmental entity itself. Tex. Dept. of Trans. v. Sefzik , 355 S.W.3d 618, 621 (Tex. 2011) (per curiam) (citing Heinrich , 284 S.W.3d at 372-73 ).
In the Parents' statement of facts in their sixth amended petition, they allege that Dobbs's predecessor participated in efforts to expand the Saved by the Bell program in 2010, lobbied for the legislation providing for a limited-powers magistrate to hear truancy cases in 2011, and otherwise generally "approved, fostered, [and] developed" the alleged criminal truancy scheme in cooperation with others. Although the Parents assert in one ultra vires count that Dobbs "or his predecessor" committed ultra vires acts in connection with the alleged scheme, the Parents *226 do not allege any wrongdoing specifically carried out by Dobbs. Further, the Parents do not identify the statutory authority that either Dobbs or his predecessor allegedly exceeded, how it was exceeded, or what allegedly unconstitutional actions were taken by either in the capacity of Chief Probation Officer. Additionally, the Parents did not seek prospective injunctive relief against Dobbs until the Parents filed their fifth amended petition in April 2016, months after the truancy laws were radically changed and the County's criminal truancy system ended.
The Parents have failed to allege any statutory duty that Dobbs violated or any specific unconstitutional act by Dobbs in his official capacity that, if taken as true, would entitle them to the relief they seek. Therefore, the Parents' claims against Dobbs have no basis in law or fact and the trial court did not err by granting Dobbs's Rule 91a motion to dismiss the Parents' claims against him. See Tex. R. Civ. P. 91a ; Creedmoor-Maha , 307 S.W.3d at 516 (holding trial court did not err in granting plea to jurisdiction and dismissing plaintiff's ultra vires claims when plaintiff's petition consisted primarily of legal conclusions and failed to allege facts that would affirmatively demonstrate the court's jurisdiction). We overrule the Parents' eleventh issue.
VII. The Denial of Class Certification
In their twelfth issue, the Parents complain that the trial court erred by denying class certification. Specifically, the Parents argue that the trial court failed to hold any hearings on the pending motion and failed to comply with Rule 42. See Tex. R. Civ. P. 42.
Rule 42(c) directs the trial court to determine whether an action is to be maintained as a class action "at an early practicable time." Tex. R. Civ. P. 42(c)(1)(A). The rule indicates that the trial court has discretion to determine the timing of a decision on class certification. See Miranda , 133 S.W.3d at 229 (citing Rule 42(c)(1)(A) as an example that "the Texas civil procedural scheme entrusts many scheduling and procedural issues to the sound discretion of the trial court"); see also In re H & R Block , 159 S.W.3d 127, 130 (Tex. App.-Corpus Christi 2004, orig. proceeding) (concluding that decision on class certification was a matter of trial court's discretion). Moreover, at the docket control hearing, the Parents acquiesced to the court's discretion and agreed to postpone consideration of the class action until after the hearing on the various defensive motions. Given that we have affirmed the trial court's holdings dismissing all of the Parents' claims, we hold that the trial court did not err by denying the Parents' motion for class certification after dismissing all of the Parents' claims. We overrule the Parents' twelfth issue.
VIII. The Sufficiency of the Explanation of the Basis for Sanctions Awarded to the Judicial Defendants, Dobbs, and the FBISD Defendants
In their third issue, the Parents and the Attorneys contend that the trial court failed to adequately specify the basis for sanctions awarded to the Judicial Defendants and Dobbs under Chapter 10 of the Texas Civil Practice and Remedies Code because "[s]imply tracking the language of the statute is insufficient." The Parents and the Attorneys also contend that the trial court failed to specify the basis for sanctions awarded to the FBISD Defendants under both Chapter 10 and sections 11.161 and 22.055 of the Texas Education Code.
Section 10.005 requires that a court "shall describe in an order imposing a *227 sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." Tex. Civ. Prac. & Rem. Code § 10.005. The Education Code does not require the court to specify the basis for a finding that a lawsuit is "frivolous, unreasonable, and without foundation" when awarding costs and attorney's fees. See Tex. Educ. Code § 11.161. The Parents and the Attorneys nevertheless argue that a court should be required to articulate the specific reasons for imposing sanctions under the Education Code just as is required by Chapter 10 and Rule 13 of the Texas Rules of Civil Procedure,[19] because anything less "allows sanctions that effectively cannot be reviewed."
The trial court's judgment included the following findings supporting the imposition of sanctions in favor of the FBISD Defendants, the Judicial Defendants, and Dobbs under the applicable statutory provisions: at the time the Parents' lawsuit was filed, and at all times afterwards, it was presented for an improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; it was not and is not warranted by existing law or a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; it lacked evidentiary support and was not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and the Attorneys did not make any type of reasonable inquiry into the above listed contentions and allegations when they certified that they were warranted by existing law or a non-frivolous argument extending or modifying the law, or that they had evidentiary support, or were likely to have evidentiary support. Additionally, the court found that the amount and types of sanctions awarded under Chapter 10 were "based on all of the pleadings, motions, evidence, and arguments of counsel, including but not limited to the cumulative amount of attorney's fees incurred" by the FBISD Defendants and the Judicial Defendants, and by "the factors enumerated by the ABA's Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure." As to the FBISD Defendants, the trial court also found that at the time the Parents' lawsuit was filed, and at all times afterwards, "it was frivolous, unreasonable, and without foundation."
As an initial matter, the Judicial Defendants, Dobbs, and the FBISD Defendants argue that the Parents and the Attorneys have waived their specificity complaint because it was not raised in the trial court. See Tex. R. App. P. 33.1 ; Akhtar v. Leawood HOA, Inc. , 525 S.W.3d 814, 820 (Tex. App.-Houston [14th Dist.] 2017, no pet.) (holding that appellant waived complaint that sanctions order violated section 10.005 by not first making the complaint in the trial court); Kamel v. AdvoCare Int'l, L.P. , No. 05-16-00433-CV, 2017 WL 1149669, at *4 (Tex. App.-Dallas Mar. 28, 2017, no pet.) (mem. op.) (same). These appellees point out that although the Parents and the Attorneys filed a motion for new trial, or, in the alternative, a motion to modify the judgment, and a request for findings of fact and conclusions of law, they did not object to any lack of specificity in the orders granting sanctions.
The Parents and the Attorneys suggest that no objection is required because the *228 requirement for particularity in a sanctions order is mandatory. This court has previously rejected a similar argument based on Rule 13 in Alexander v. Alexander . See 956 S.W.2d 712, 714 (Tex. App.-Houston [14th Dist.] 1997, pet. denied) (holding appellant was required to object to a lack of particularity in the trial court even though courts have recognized that Rule 13 's directive that the court specify the basis for sanctions is mandatory).
The Parents and the Attorneys also argue that their motion for new trial alerted the court to its failure to adequately describe the offending conduct, because they argued that the amount of the sanctions was excessive and made without reference to any guiding rules and principles, and listed the American Bar Association factors used to evaluate sanctionable conduct. Finally, the Parents and the Attorneys assert that their request for findings of fact and conclusions of law preserved any complaint regarding the trial court's failure to satisfy section 10.005, because if the trial court had made findings (which it did not), the findings would be sufficient to satisfy the specificity requirements.
The thrust of the motion for new trial was that the Parents and the Attorneys' conduct did not warrant the sanctions imposed under any standard. In the motion, the Parents and the Attorneys demonstrated no difficulty identifying the sanctionable conduct alleged or the applicable legal standards. The request for findings and conclusions was perfunctory and referred only to the final judgment. Nothing in the Parents' and the Attorneys' motion for new trial or request for findings and conclusions was sufficiently specific to make the trial court aware that they were complaining that the sanctions orders failed to set out the particulars of the sanctionable conduct.
Because the Parents and the Attorneys failed to raise their specificity complaint in the trial court, we conclude that they have failed to preserve this issue for review. See Tex. R. App. P. 33.1(a) ; Akhtar , 525 S.W.3d at 820 ; Alexander , 956 S.W.2d at 714 ; cf. Horizon Health Corp. v. Acadia Healthcare Co. , 520 S.W.3d 848, 885 (Tex. 2017) (holding petitioner failed to preserve complaint that trial court's sanctions order failed to specify grounds for sanctions when complaint was not first briefed in appellate court and was raised for first time in supreme court).[20] We overrule the Parents and the Attorneys' third issue.
IX. The Sanctions Awarded Against the Parents and the Attorneys
In their fourth issue, the Parents and the Attorneys contend that the trial court erred in awarding sanctions to the FBISD Defendants, the Judicial Defendants, and Dobbs against them "for filing the lawsuit." The Parents and the Attorneys argue that the lawsuit was not groundless or brought in bad faith, and that they pleaded legitimate ultra vires claims.
A. Standard of Review and Applicable Law
Generally, courts presume pleadings and other papers are filed in good faith. Nath v. Tex. Children's Hosp. , 446 S.W.3d 355, 361 (Tex. 2014) ; Low v. Henry , 221 S.W.3d 609, 614 (Tex. 2007). The party seeking sanctions bears the burden of overcoming this presumption of good faith. Nath , 446 S.W.3d at 361 ; Low , 221 S.W.3d at 614.
*229 We review appeals from sanctions orders under an abuse of discretion standard. Low , 221 S.W.3d at 614 ; Cire v. Cummings , 134 S.W.3d 835, 838 (Tex. 2004). An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. Low , 221 S.W.3d at 614 (citing Cire , 134 S.W.3d at 838-39 ). We will not find an abuse of discretion in awarding sanctions if some evidence supports the trial court's decision. Nath , 446 S.W.3d at 361.
Chapter 10 allows a trial court to "impose a sanction on [a] person, a party represented by the person, or both" when the court "determines that [the] person has signed a pleading or motion in violation of Section 10.001." Tex. Civ. Prac. & Rem. Code § 10.004(a). Section 10.001 specifies that the signatory of a pleading or motion certifies "to the signatory's best knowledge, information, and belief, formed after reasonable inquiry":
(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.
Id. § 10.001; Low , 221 S.W.3d at 614-15. Section 10.001 "dictates that each claim and each allegation be individually evaluated for support" as to each defendant. Low , 221 S.W.3d at 615. Although Chapter 10 requires that groundlessness be assessed as of the time of filing, a party or counsel can be sanctioned for subsequently filed pleadings. See Nath , 446 S.W.3d at 371.
Relevant to the FBISD Defendants, the Education Code provides that if the court finds that a party has filed a lawsuit that is "frivolous, unreasonable, and without foundation" and the suit is dismissed or the judgment is for the defendant, the court may award costs and reasonable attorney's fees to an independent school district, an officer acting under color of office, or a school district employee acting under color of employment. See Tex. Educ. Code §§ 11.161, 22.055. Attorney's fees and costs awarded under the Education Code are reviewed for abuse of discretion. See Ollie v. Plano Indep. Sch. Dist. , 383 S.W.3d 783, 794 (Tex. App.-Dallas 2012, pet. denied).
B. Application of Law to Facts
1. Sanctions awarded to the FBISD Defendants are supported by the evidence.
The trial court awarded the FBISD Defendants a total of $144,410 in attorney's fees, to be paid as follows: $5,000 paid by Roach; $5,000 paid by Brady; $2,500 paid by Soto; $2,500 paid by Anhalt; $2,500 paid by Isgitt; and $126,910.77 paid by Harrington. The court also awarded an additional penalty sanction of $50,000 to be paid by Harrington, as well as conditional appellate attorney's fees and $2,377.72 in costs.
*230 As mentioned above, before filing the lawsuit, Harrington met with FBISD officials on behalf of the Parents to complain about the then-existing criminal truancy system in Fort Bend County. After that meeting, FBISD agreed to immediately suspend its existing truancy procedures and cease making criminal referrals to the Truancy Court. FBISD's counsel also warned that the Parents' proposed lawsuit, if filed, could be viewed as "premature and frivolous." Nevertheless, Harrington expressed the belief that he needed to subject FBISD and Fort Bend County to "a kick in the nuts" and a "cat 5 wind." Consequently, on May 6, 2016, the Parents and the Attorneys filed this lawsuit seeking injunctive relief to prohibit the continued operation of the Fort Bend County Truancy Court.[21] On May 25, 2015-nineteen days after the lawsuit was filed-the Legislature passed legislation that repealed and replaced existing criminal truancy laws and provided for the expunction of all previous criminal convictions and complaints.
Despite these actions mooting the Parents' claims, and despite the fact that the Parents' children's truancy complaints were dismissed, the Parents and the Attorneys continued to litigate the case, arguing that the FBISD Defendants could conceivably engage in ultra vires acts in the civil truancy system, even though they remained unable to identify a single instance of such conduct. During this time, the Parents and the Attorneys also multiplied the proceedings by, among other things, amending the Parents' original petition six times to add and delete parties and claims; moving for class certification; seeking to recuse-and then disqualify-the trial judge; and suing the trial judge and every other sitting judge in Fort Bend County. These actions are some evidence supporting the imposition of sanctions against the Parents and the Attorneys.
The record also supports the additional sanctions imposed against Harrington. During the sanctions hearing, Harrington admitted that he was aware, and had been advised by FBISD's counsel, of the potential hazards of continuing to proceed with the litigation. Harrington also failed to adequately articulate the basis of the asserted ultra vires claims, despite multiple opportunities to do so. Moreover, Harrington admitted that he had no evidence to support the claims, despite litigating the case for over a year.
This evidence is sufficient to support the trial court's findings that the lawsuit was frivolous, unreasonable, and without foundation; presented for an improper purpose; not warranted by existing law or a non-frivolous argument for the extension, modification or reversal of existing law; lacking in evidentiary support; and that the Attorneys did not make reasonable inquiry into the lawsuit's contentions and allegations. We conclude that the trial court did not abuse its discretion by awarding sanctions, attorney's fees, and costs under Chapter 10 and the Education Code against the Parents and the Attorneys. See Tex. Civ. Prac. & Rem. Code § 10.001 ; Tex. Educ. Code §§ 11.161, 22.055. We therefore overrule issue four as to the FBISD Defendants.
2. Sanctions awarded to the Judicial Defendants and Dobbs are supported by the evidence.
The Judicial Defendants and Dobbs were awarded $90,700, to be paid as follows: $2,500 paid by Roach; $2,500 paid *231 by Brady; $1,500 paid by Soto; $1,500 paid by Anhalt; $1,500 paid by Isgitt; and $81,200 paid by Harrington. The court also awarded an additional sanction of $80,000 to be paid by Harrington, $1,425.87 for costs, and conditional appellate attorney's fees. As an additional sanction under Chapter 10, the trial court ordered Harrington to complete a specified number of hours of continuing legal education regarding legal pleadings, legal ethics, and the legal concept of ultra vires.
The record shows that when the Parents moved to disqualify Judge Elliott on the ground that he had a direct pecuniary and personal interest in the litigation because he was a member of the Juvenile Board, the FBISD Defendants filed a response pointing out that neither Judge Elliott nor the Juvenile Board were then parties-or even mentioned-in the lawsuit. Less than a week later, the Parents and the Attorneys remedied that by filing a third amended petition naming the Judicial Defendants. The Judicial Defendants were added to the lawsuit in November 2015, well after truancy had been decriminalized and criminal truancy referrals were no longer being made. Months later, at the hearing on September 22, 2016, Harrington would admit under oath that as of the date the Judicial Defendants were sued, the Parents and the Attorneys had no evidence that any members of the Juvenile Board were engaged in ultra vires acts.
Before serving the Judicial Defendants with the third amended petition, in December 2015, Harrington sent a letter to the Judicial Defendants, the FBISD Defendants, and the Fort Bend County Defendants, offering to settle the lawsuit and demanding $135,000 in attorney's fees. After the Judicial Defendants were served, their counsel sent a letter warning the Attorneys that if the claims against the Judicial Defendants were not voluntarily dismissed, the Judicial Defendants would be filing a motion to dismiss under the TCPA that would likely succeed, resulting in dismissal of the lawsuit and an award of attorney's fees and sanctions against the Parents. Harrington dismissed the warning as a litigation tactic. During the sanctions hearing, Harrington testified that could not remember whether he informed his clients about the letter and threat of sanctions, and he denied that he was ethically required to tell them.
The Parents' third amended petition also continued to name as a plaintiff Corena Valle, as next friend of her daughter, even though Harrington acknowledged for the first time that he did not represent her and had never spoken to her.[22] Nevertheless, all of the subsequent petitions, including the sixth amended petition, continued to name Valle as a plaintiff, subjecting her to the possibility of attorney's fees and sanctions-not only as to the Judicial Defendants, but the other defendants as well.
Finally, the Parents did not add Dobbs as a defendant until April 2016, when the Parents and the Attorneys filed their fifth amended petition-more than six months after the criminal truancy law was repealed. The petition did not allege any specific wrongdoing by Dobbs. And, despite amending their petition for a sixth time, roughly two months after Dobbs filed his Rule 91a motion and moved for attorney's fees and sanctions, the Parents again failed to allege any wrongdoing by Dobbs either before or after the change in the law.
*232 We conclude that this evidence, and the evidence that also supports an award of sanctions to the Judicial Defendants and Dobbs, supports the trial court's findings that the Parents' lawsuit was presented for an improper purpose, was not warranted by the law, and lacked evidentiary support, and that the Attorneys did not make a reasonable inquiry into the contentions and allegations made in the lawsuit. Therefore, the trial court did not abuse its discretion by imposing sanctions, attorney's fees, and costs under Chapter 10 against the Parents and the Attorneys. See Tex. Civ. Prac. & Rem. Code § 10.001. We overrule issue four as to the Judicial Defendants and Dobbs.
X. The Sufficiency of the Explanation of the Reasons for Sanctioning the Parents
In their fifth issue, the Parents contend that the trial court erred by failing to explain the reasons for sanctioning them. As explained in our discussion of issue three, the Parents failed to make the trial court aware of this complaint; therefore, it is not preserved for appeal. See Tex. R. App. P. 33.1(a). To the extent the Parents contend that there is "no evidence" that Roach or Brady engaged in sanctionable conduct, however, we address that issue.
As previously discussed, Roach and Brady continued to prosecute their lawsuit against numerous defendants for many months despite the change in the truancy law and the dismissal of the criminal complaints against their children. Before the sanctions hearing on September 22, 2016, counsel for the Judicial Defendants subpoenaed Roach, Brady, and Valle to appear at the hearing so that they could be questioned about their reasons for filing the lawsuit and why they sued these defendants. In response, Harrington filed a protective order and told them not to come. The trial court denied the protective order, however, and ordered the Parents' counsel to inform the named plaintiffs that they needed to appear.
Brady, a Houston police officer, eventually appeared and testified that his son was mailed a truancy summons in Aril 2015 "that said they were going to put him in jail," which he thought was not right to do to a twelve-year-old boy. Brady engaged Harrington as his attorney to prosecute the case and authorized him "to do whatever he needed to do to get this stopped so it doesn't happen to other people." Brady knew that the law had changed in September 2015 and that the truancy system was "suspended," but he agreed to continue as a named plaintiff because Harrington told him "it was necessary to continue the litigation." Brady could not recall if he ever read the various pleadings, and he did not personally investigate or authorize Harrington to sue the all the judges in Fort Bend County or send the December 2015 demand letter to the Judicial Defendants, the FBISD Defendants, and the Fort Bend County Defendants.
Roach never appeared at the hearing. Based on her nonappearance, the trial court invoked the adverse inference rule against her, meaning that any evidence she would have been able to provide to the court regarding the lawsuit would show that she had no knowledge of any of the pleadings that were filed, and no knowledge of any of the actions taken or motions made in the court because of the failure to be informed of those. Valle, who does not speak English, did appear, but once it became apparent that she never authorized Harrington to file suit on her behalf, she was released from the subpoena and excused without being sanctioned.
Because some evidence supports the trial court's finding that sanctions were warranted against the Parents as well as the *233 Attorneys, we cannot say that the trial court abused its discretion imposing sanctions against the Parents under Chapter 10. See Tex. Civ. Prac. & Rem. Code §§ 10.001(1), (3), (4) & 10.004(a).
XI. The Amount of Sanctions
In their sixth issue, the Parents and the Attorneys contend that "sanctions of $130,000 were excessive." In their reply brief, the Parents and the Attorneys clarify that they are complaining about the $50,000 in additional penalty sanction awarded to the FBISD Defendants and the $80,000 in additional sanctions awarded to the Judicial Defendants and Dobbs, both of which were ordered to paid by Harrington.
The Parents and the Attorneys argue that these sanctions were excessive "to the extent they were based on groundless pleadings or any other conduct." In support of this argument, they cite to a portion of the Nath opinion, in which the supreme court surveyed several cases to illustrate that historically, awards for groundless pleadings in Texas "have been moderate, at least in monetary terms." See 446 S.W.3d at 363-64.
Chapter 10 provides that when a court determines that a person has violated Section 10.001, the court may impose on the person a sanction that may include any of the following: (1) a directive to the violator to perform, or refrain from performing, an act; (2) an order to pay a penalty into court; and (3) an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees. Tex. Civ. Prac. & Rem. Code § 10.004(a), (c). The sanction "must be limited to what is sufficient to deter repetition of the conduct or comparable conduct of others similarly situated." Id. § 10.004(c).
Notably, the sanction at issue in Nath , on which the Parents and the Attorneys rely, was in excess of one million dollars and was assessed against a party rather than the attorney. 446 S.W.3d at 358. Even then, however, the supreme court did not hold that the award was excessive as a matter of law, but remanded the case to the trial court to reassess the amount of sanctions after taking into account a factor not previously considered. See ids="6904615" index="132" url="https://cite.case.law/sw3d/446/355/#p361">id. at 358-59.
In Nath , the supreme court explained that in addition to complying with the requirements of the governing substantive law, a sanction must also comply with due process by being "just and not excessive." Id. at 358. First, there must be "a direct nexus between the offensive conduct, the offender, and the sanction award." Id. at 363 (citing TransAmerican Nat. Gas Corp. v. Powell , 811 S.W.2d 913, 917 (Tex. 1991) ). "A just sanction must be directed against the abusive conduct with an eye toward remedying the prejudice caused to the innocent party, and the sanction must be visited upon the true offender." Id. Second, the punishment should fit the crime and be "no more severe than necessary to satisfy its legitimate purposes." Id. Legitimate purposes may include "securing compliance with the relevant rules of civil procedure, punishing violators, and deterring other litigants from similar misconduct." Id. (citing Spohn Hosp. v. Mayer , 104 S.W.3d 878, 882 (Tex. 2003) ).[23]
*234 The FBISD Defendants argue that the additional sanctions against Harrington are not excessive as a matter of law, citing to cases in which courts have affirmed sanctions awards in line with the FBISD Defendants' award. See Zeifman v. Nowlin , 322 S.W.3d 804, 811 (Tex. App.-Austin 2010, no pet.) (affirming $40,000 sanctions award under Rule 13 ); Vela v. Wagner & Brown, Ltd. , 203 S.W.3d 37, 62 (Tex. App.-San Antonio 2006, no pet.) (affirming $75,000 sanctions award for discovery abuse). The FBISD Defendants also argue that the additional $50,000 awarded to them is roughly a third of the amount of their attorney's fees award, much less than the award affirmed in Zeifman , in which the court upheld a sanctions award that was equal to the total attorney's fees the party incurred. See 322 S.W.3d at 811. Similarly, the Judicial Defendants and Dobbs argue that Harrington's conduct warranted the $80,000 sanction for his personal conduct that caused $81,200 in unnecessary attorney's fees to be incurred by them. See Skepnek v. Mynatt , 8 S.W.3d 377, 380-82 (Tex. App.-El Paso 1999, pet. denied) (affirming a sanction award under Chapter 10 of $5,000 in attorney's fees and $25,000 as a penalty sanction); Falk & Mayfield, L.L.P. v. Molzan , 974 S.W.2d 821, 823-825 (Tex. App.-Houston [14th Dist.] 1998, pet. denied) (affirming sanctions award under Rule 13 amounting to three times the attorney's fees incurred).
Having reviewed the entire record, we conclude that the trial court reasonably could have found that the additional sanctions were necessary to secure Harrington's compliance with the relevant rules of civil procedure, punish his abusive conduct, and deter others from similar misconduct. See Nath , 446 S.W.3d at 363. Harrington, an experienced attorney, was the attorney-in-charge throughout the case. He initially presented a draft lawsuit to the County and FBISD and threatened to file it unless certain changes were made to the criminal truancy system, and then, after receiving the requested relief, filed the lawsuit anyway. Harrington was also instrumental in maintaining the lawsuit long after the County's and FBISD's criminal truancy system-and the complaints alleged-ended. Despite warnings from defense counsel that the claims asserted were frivolous, filed in bad faith, and sanctionable, Harrington nevertheless persisted in repeatedly amending the pleadings to eventually include numerous public officials and others who were required to obtain counsel and defend themselves for over a year against ever-morphing claims for prospective injunctive relief unsupported by either cogent allegations or evidence of wrongdoing under the new civil truancy system.
Therefore, we hold that the trial court did not err in awarding the additional sanctions against Harrington. Moreover, the additional sanctions are less than or roughly equal to the attorney's fees incurred, and thus are no more severe than necessary to satisfy their legitimate purposes. See ids="6904615" index="146" url="https://cite.case.law/sw3d/446/355/#p361">id. We overrule the Parents and the Attorneys' sixth issue.
XII. The Award of Appellate Attorney's Fees to the FBISD Defendants, the Judicial Defendants, and Dobbs
In their seventh issue, the Parents and Attorneys contend that the FBISD Defendants, the Judicial Defendants, and Dobbs are not entitled to recover the conditional appellate attorney's fees awarded in the *235 event of an appeal to the court of appeals because the judgment does not order any person to pay the fees. The Parents and the Attorneys argue that the award is unenforceable because there were multiple plaintiffs and attorneys involved, so anyone seeking to enforce the judgment could not determine who was ordered to pay the appellate fees.
The Parents and the Attorneys do not argue that the trial court committed reversible error and cite no authority to support their complaint. It is not our duty to review the record, research the law, and then fashion a legal argument for an appellant when he has failed to do so. See Canton-Carter v. Baylor Coll. of Med. , 271 S.W.3d 928, 931-32 (Tex. App.-Houston [14th Dist.] 2008, no pet.). We conclude that this complaint is waived by the Parents and the Attorneys' failure to adequately brief any argument in support of this issue. See Canton-Carter , 271 S.W.3d at 931 ; see also Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We overrule the seventh issue.
CONCLUSION
Having overruled the Parents' and the Attorney's issues, we affirm the trial court's judgment.

Percy Isgitt is no longer eligible to practice law in Texas, having resigned in lieu of disciplinary action by the State Bar of Texas.

See Act of May 28, 2011, 82d Leg., R.S. ch. 1098, § 1, sec. 25.094, 2011 Tex. Gen. Laws 2837, repealed by Act of May 30, 2015, 84th Leg., R.S., ch. 935, § 41, §§ 65.001-.259, 2015 Tex. Gen. Laws 3224, 3255.

The Juvenile Board of Fort Bend County is composed of the county judge, the district judges, and the judge of each county court at law in Fort Bend County. See Tex. Hum. Res. Code § 152.0851.

Act of May 24, 2011, 82d Leg., R.S., ch. 995, § 1, secs. 54.1951-.1957, 2011 Tex. Gen. Laws 2533, 2533-34 (codified at Tex. Gov't Code §§ 54.1951 -.1957).

See Act of May 30, 2015, 84th Leg., R.S., ch. 935, § 27, secs. 65.001-.259, 2015 Tex. Gen. Laws 3224, 3236-3249 (codified at Tex. Fam. Code §§ 65.001 -.259).

See Act of May 30, 2015, 84th Leg., R.S., ch. 935, § 3, art. 45.0541, 2015 Tex. Gen. Laws 3224, 3225 (codified at Tex. Code Crim. Proc. art. 45.0541 ). Because of this lawsuit, however, Justice of the Peace Court No. 3 amended its original expunction order to delay expunctions in Fort Bend County until this lawsuit becomes final. See Tex. Local Gov't Code § 202.002(a) (providing that "a local government record the subject matter of which is known by the custodian to be in litigation may not be destroyed until the litigation is settled").

Although the supplemental petition also added Corena Valle, as next friend of her daughter, Harrington later admitted that he had never met or spoken to Valle, and did not have her consent to be a plaintiff in this lawsuit.

The Fort Bend County Defendants are Judge Ken Cannata, Precinct 3 Justice of the Peace, Magistrate Nina Schaefer, County Judge Robert E. Hebert, and County Commissioners Richard Morrison, Grady Prestage, Andy Meyers, and James Patterson. All short form names for the three groups of defendants are those used in the final judgment.

The FBISD Defendants are Heather Ingram, Erin Miller, Grayle James, Dave Rosenthal Kristen K. Tassin, Jason Burdine, KP George, Addie Heyliger, and Jim Rice.

The Judicial Defendants are district court and county court at law judges in Fort Bend County, namely Chad Bridges, Ronald Pope, Brenda Mullinix, Maggie Perez-Jaramillo, James Shoemake, David Perwin, Christopher Morales, Jeffrey McMeans, Susan Lowery, and R.H. Bielstein. By virtue of their positions, the judges are also members of the Juvenile Board, as is the county judge. See Tex. Hum. Res. Code § 152.0851.

The TCPA is "sometimes referred to as an anti-SLAPP law-the acronym standing for strategic lawsuit against public participation." KBMT Operating Co. v. Toledo , 492 S.W.3d 710, 713 n.6 (Tex. 2016).

This interlocutory appeal, No. 14-16-00790-CV, has been consolidated with the appellants' appeal from the final judgment, No. 14-16-01016-CV.

In their initial brief, appellants also argued that that the trial court orally denied the counter-TCPA motion at the August 26 hearing. In their reply brief, however, appellants expressly abandon this argument, stating: "The court did not rule on Roach's [counter-TCPA] motion on August 26."

See Tex. Hum. Res. Code § 152.0851.

See Tex. Civ. Prac. & Rem. Code § 30.017 (procedures for severing claims made against certain judges who are added to a pending case). The claims against Judge Elliott were severed from this case over the Parents' objection; however, the Parents do not present an issue on appeal concerning the severance.

Appellants acknowledge that minutes from a September 9, 2015 board meeting, occurring not long after the lawsuit was filed, show that Judge Elliott recused himself during discussions concerning an interlocal agreement between Fort Bend County, FBISD, and the Juvenile Board concerning funding for the new civil truancy court.

It is undisputed that the actions taken during Juvenile Board meetings are governed by the Texas Open Meetings Act, see Tex. Gov't Code § 551.102, meaning that the Juvenile Board is required to make a decision or take action in an open session meeting, and that the board's actions were recorded by minutes.

Among other things, school districts have the option to not refer truancy matters to court if they have successful truancy prevention measures in place; when school districts do make referrals to a truancy court, a truant conduct prosecutor reviews the referral for any defects and then decides whether to file it in a truancy court; and the truancy court sets the time and date of a hearing and orders a summons. See Tex. Educ. Code § 25.0915 ; Tex. Fam. Code §§ 65.051 -.053, 65.056-.057.

Rule 13 requires that a party who is found to have filed a lawsuit that is groundless and brought in bad faith or for the purpose of harassment may be sanctioned for good cause, "the particulars of which must be stated in the sanction order." See Tex. R. Civ. P. 13. Appellants do not contend that Rule 13 is at issue in this case.

As to the FBISD Defendants, even assuming that the trial court's findings were inadequate under Chapter 10, at least one court has held that any error is harmless as to costs and attorney's fees also awarded under the Education Code. See Loeffler v. Lytle Indep. Sch. Dist. , 211 S.W.3d 331, 350 (Tex. App.-San Antonio 2006, pet. denied).

Roach's sixty-six page original petition attached an appendix of 222 pages of exhibits, including over 100 pages of documents relating to Harrington's daughter's unexcused absences, referral to the Truancy Court, and meetings about this issue in the fall of 2013.

According to Harrington, Valle was added at the request of another lawyer who was dropped from the pleadings before the Judicial Defendants were added, and Harrington had been unable to get in touch with her.

The supreme court has recognized a nonexclusive list of factors a trial court may consider in assessing sanctions. See Nath , 446 S.W.3d at 371-72 & n.29. A court need not consider all the factors, but should consider the relevant factors in assessing the amount of the sanction. Id. at 372. Although the final judgment in this case recited that the trial court considered these factors, among other things, the court did not specify which factors it found relevant. The Parents and the Attorneys do not discuss these factors in their argument.